# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

LEONARD ALLEN McCORD,        )
                                 )
          Petitioner,        )
                                 )
    vs.                   )  Case no. 4:09cv0428 TCM
                                 )
JEFF NORMAN and CHRIS KOSTER, )
Attorney General for the State of Missouri,[1] )
                                 )
          Respondents.    )

## MEMORANDUM AND ORDER

Leonard Allen McCord (Petitioner), a Missouri prisoner, petitions the United States District Court for the Eastern District of Missouri for federal habeas corpus relief from a 2005 conviction following a jury trial.  See 28 U.S.C. § 2254.

This matter is before the undersigned United States Magistrate Judge for review and final disposition of the petition.[2]  Finding that the pending federal habeas petition presents

---

[1]  At the time he filed this federal habeas action, Petitioner was serving the first (fifteen year) term of two consecutive terms of imprisonment to which he was sentenced as a result of the conviction that is the focus of this action, and Petitioner will in the future serve the second (five year) term of imprisonment. Because at the time he filed this action, Petitioner was challenging a sentence he was going to serve in the future, the Attorney General for the State of Missouri, Chris Koster, will be added as a proper party respondent.  See Rule 2(b), Rules Governing Section 2254 Cases in the United States District Courts.

Additionally, the record reveals that Petitioner is incarcerated at the Jefferson City Correctional Center (JCCC), where Jeff Norman is now the Warden.  Therefore, the Court will substitute Norman for the originally named Respondent, Dave Dormire, who was the warden at the JCCC when Petitioner filed this federal habeas action.  See Rule 2 (a), Rules Governing Section 2254 Cases in the United States District Courts.

[2]  This matter is before the undersigned United States Magistrate Judge on consent of the parties.  28 U.S.C. § 636(c).

four grounds for relief, that the second ground is not cognizable in a federal habeas proceeding, and that the other three claims lack merit, the Court will deny the petition without further proceedings.

## Background

Petitioner was charged with committing, on July 14, 2004, the class A felony of murder in the second degree, in violation of Mo. Rev. Stat. § 565.021, and the felony of armed criminal action,in violation of Mo. Rev. Stat. § 571.015, by knowingly shooting a neighbor (Victim).  (See Superseding Indictment in lieu of Information, Legal File, Resp'ts Ex. D, at 22-25.)

At the jury trial, in addition to introducing numerous exhibits (including a gun, .357 magnum bullets, and a tape recording of Petitioner's 911 call after the shooting), the State presented the testimony of fourteen witnesses, including eight law enforcement officials who helped investigate the shooting, the paramedic who took Victim to the hospital, the surgeon who operated on Victim, the assistant medical examiner who performed the autopsy, Petitioner's cousin, Victim's fiancee, and a person who was in custody with Petitioner prior to Petitioner's trial.

Larry Robinson, Petitioner's cousin who lived with Petitioner, testified that Victim was invited over for a barbecue, the three of them ate and drank, and Victim and Petitioner got in a physical fight; that Victim apologized to Petitioner; that he and Victim talked in the kitchen after Petitioner went into his bedroom; that he and Victim then heard a sound and Victim headed toward Petitioner's bedroom; that Victim and Petitioner were struggling over

something, and he heard Petitioner say to him, "I don't want you getting shot or hurt. Get out of here. Get out of here now"; and that Robinson left the house then and got Carrie K. Nelson, Victim's fiancee and Petitioner's neighbor; and, as they walked toward Petitioner's home, they heard two shots about five seconds apart. (Trial Tr., Resp'ts Ex. E, at 261-94.)

Nelson, Victim's fiancee, who lived across the street from Petitioner with Victim, testified that she was awakened by Robinson, and heard two gunshots as she and Robinson walked toward Petitioner's home; and that she then saw Petitioner leave his house and go to his truck to make a call for an ambulance because there had been a shooting. (Id. at 216-25.)

Chris Ellis, an officer with the Wentzville Police Department, who responded to the emergency call, arrested Petitioner after Petitioner told him that Victim "came into [Petitioner's] residence [and] assaulted [Petitioner], so [Petitioner] shot [Victim]"; and, inside the house, found Victim lying face up in a hallway and a revolver on top of a night stand in the second bedroom.. (Id. at 230-34.)

 Cindy Mayer, an officer with the Wentzville Police Department, took custody of Petitioner at the scene; smelled alcohol and noticed that Petitioner had a bruised eye and asked if he wanted medical attention, which he declined by stating "No, but it sure was a good thing I had a gun" (id. at 243); read Petitioner his rights (id. at 240); and then transported him to the police department (id. at 240-41) during which time Petitioner saw the ambulance driving to the scene and "laughed and said, 'You won't need them. I took care of him'" (id. at 241).

Joseph Wright, a Detective Sergeant with the Wentzville Police Department, testified that he videotaped Petitioner's statement (id. at 319, 322) and investigated the scene, finding a gouge in the plaster board of the living room wall (id. at 297), a spent projectile on top of a couch cushion (id.), an "exit hole coming from the bedroom outward," (id. at 299), pieces of Victim's belt buckle on the floor (id. at 302), blood on the "back side of the wall that had the gouge in it, in the hallway side" (id. at 303), a bullet hole with blood on the right side (id. at 304), two boxes of .357 ammunition in the bottom drawer of a night stand in Petitioner's bedroom (id. at 307), a bullet hole in the comforter on the bed in Petitioner's bedroom (id.), "damage[ in the mattress cover for the bed in Petitioner's bedroom] as a result of a weapon being fired from . . . someone in bed" (id.), bullet holes in Petitioner's bedroom (id. at 311), and a .357 revolver on a night stand in the second bedroom (id. at 315, 317).

Ricky Edward Leutkenhaus, who worked for the Forensic Services Unit of the St. Charles County Sheriff's Department, testified that he investigated the scene, where he saw damage on a bed, a bullet hole in the bedroom wall, a bullet hole in the living room wall, and a "glancing [bullet] hole" in the living room wall (id. at 348); and stated he recovered a bullet in the living room that had "traveled from the bed through the wall in the bedroom side, into and through the living room wall and glanced off of [the other living room] wall" (id. at 351).

Tiffany Fischer, a crime scene investigator for the St. Charles County Sheriff's Department, was unable to identify fingerprints on the revolver recovered from the scene of the shooting (id. at 352-56) and Cary Maloney, a DNA technical leader at the Missouri State

- 4 -

Highway Patrol Crime Laboratory, analyzed sheets from Petitioner's bed and found Victim's DNA on the fitted sheet (id. at 365-68).

Tim McGuire, a paramedic for the St. Charles County Ambulance District, who responded to the shooting, found Victim on his back on the floor between the hallway and bedroom.  (Id. at 357-62.)

Jane Turner, the deputy medical examiner who performed an autopsy on Victim, noted "acute ethanol intoxication" on the death certificate, found bruising and a cut on Victim, and determined Victim died of a gunshot to the abdomen, as a result of two gunshot wounds to his abdomen, with the "first"[3] one indicating the gun was at "close to medium" range and the "second" one indicating the gun was at "medium" range.  (Id. at 372-86.)

Evan Todd Garrison, a criminal supervisor at the Missouri State Highway Patrol Crime Laboratory and a firearms and ballistics expert, testified that the hole in Victim's shirt from the "first" gunshot was "consistent with or indicative of a close or contact gunshot discharge" and the "second" hole indicated the end of the gun barrel was three to four feet away from Victim.  (Id. at 386-410.)

Andrew Sutton, who was in custody at the same facility as Petitioner, testified that Petitioner had mentioned he had shot through his bedroom wall "hoping to hit or scare" Victim (id. at 332), that Victim "was berating [Petitioner], calling him [names], and [saying Petitioner] wouldn't pull the trigger [and t]hat's when [Petitioner] shot him[, then V]ictim

---

[3]  There is no indication of record which gunshot occurred first in time; the "first" and "second" designations are for ease of reference.

grabbed onto the gun and [Petitioner] shot him again" (id. at 333); and that Petitioner stated he was going to try to claim self-defense because Victim had grabbed the gun and the shooting occurred in Petitioner's home (id. at 333-34).

Petitioner first presented the testimony of Terry Joe Johnson, who was in custody where Petitioner and Sutton were in custody, testified that Sutton commented that he was going to try to get out, that he was going to use others' comments about their cases to his advantage. (Id. at 414-20. Petitioner then testified. Petitioner stated that the day of the shooting, he and Robinson had a barbecue at Petitioner's home, which Victim attended. (Id. at 422-23.) While Robinson cleaned the dishes, Petitioner and Victim "st[ood] around drinking beer," Victim said "he was going to whip [Petitioner's] butt," and they had a fistfight. (Id. at 424-25.) Petitioner's elbow was "bloodied" and he got a black eye as a result of the fight. (Id. at 425.) Victim and Petitioner then stopped fighting, "made up with each other," and continued drinking beer. (Id. at 426.) After awhile Petitioner went to his bedroom to go to sleep. (Id. at 428.) At some point, when his bedroom door was shut, Petitioner "w[oke] up and was frightened, and [he] do[es]n't know why but [he] thought there was somebody in the room and they were going to kill [him so he] went for [his] gun . . . [i]n the nightstand[, he] reached for it and pulled it up, and [he] was shaking like crazy. [He] didn't know what to do. And . . . [he] fired it." (Id. at 429.) He got out of bed, with the gun, to see if anyone was in the room, then his "bedroom door swung open and . . . [Victim] came in and . . . grabbed the [barrel of the] gun." (Id. at 431.) As they struggled with the gun, Petitioner told Victim to let go of the gun, then two shots went off, and Victim "went down." (Id. at 433, 436-37,

442, 443.)  Petitioner, who had been in bed naked (id. at 428), put pants on and walked out

to his truck to call an ambulance.  (Id. at 434.)  After making the call, Petitioner placed the

gun in the second bedroom because he "didn't want the guy to get up and hurt me – kill me

with it."  (Id. at 435.)

During the jury instruction conference, Petitioner's counsel objected to the giving of

verdict-directing instructions on the lesser included offenses of voluntary and involuntary

manslaughter, as the State had suggested.  (Id. at 468-73.)  The trial court overruled those

objections.  (Id. at 471, 472.)  The trial court read the instructions to the jury, including

verdict-directing instructions for second-degree murder, voluntary manslaughter, and

involuntary manslaughter, as well as the related armed criminal action verdict-directing

instructions and a  self-defense instruction.  (Id. at 481-93.)

During closing, the State argued in relevant part that this was

a case of cold-blooded murder. [Petitioner] laid in his bed after their fight on
July 14, 2004 thinking of ways to kill [Victim], thinking of how he could get
away with it.  That anger and that venom and that thought of revenge built up
in him so much that he fired a shot blind through the wall towards where he
could hear [Robinson] and [Victim] sitting in the kitchen. . . .

        After [Petitioner] . . . shot that first shot through the wall, [Victim] had
no idea what he was walking into.  He walked back to [Petitioner]'s room, and
 . . . when he got to [Petitioner]'s room [Petitioner] was ready for him.
[Petitioner] shot him once from three to four feet away, [and] shot him again.

                           *     *     *

        . . . I'm asking you to hold [Petitioner] accountable for the cold-blooded
murder of [Victim], and to return a verdict of guilty of murder in the second
degree and armed criminal action.

(Id. at 494, 502.)

During closing argument, which focused on Petitioner's position that he had acted in self-defense, Petitioner's counsel asked the jury, in relevant part, to

> take a minute and look at [Petitioner]. He's not a beautiful young man. He's not particularly educated. He's not particularly intelligent. He's a hard working, hard living, hard drinking, fight with his girlfriend old boy, redneck, hillbilly. He's not capable of planning a murder like the State would like to have you believe.

(Id. at 503.)

The jury found Petitioner guilty of involuntary manslaughter in the first degree and armed criminal action, assessing punishment at seven years and fifteen years, respectively. (Id. at 529-30, 559-60; Verdict Forms, Legal File, Resp'ts Ex. D, at 47, 48, 54, 55.) After denying Petitioner's motion for new trial or in the alternative for judgment of acquittal (Sentencing Hr'g Tr., Resp'ts Ex. E, at 4; Sentence and Judgment and Commitment, Legal File, Resp'ts Ex. D, at 59-60), the trial court sentenced Petitioner to consecutive terms of imprisonment of seven years for involuntary manslaughter and fifteen years for armed criminal action (Sentencing Hr'g Tr., Resp'ts Ex. E, at 14-15).

Petitioner filed a direct appeal. In point one of that appeal, Petitioner argued that his rights to due process and a fair trial under the Sixth and Fourteenth Amendments were violated by the prosecutor's cross-examination of Petitioner about his prior arrests and assaults, because Petitioner had not introduced evidence of Victim's character. (Pet'r Br., Resp'ts Ex. A, at 16, 18.) In his second point, Petitioner contended that his rights to due process and a fair trial under the Sixth and Fourteenth Amendments were violated by the

lesser included offense instructions given to the jury over Petitioner's objection, because a defendant may waive the giving of lesser included offense instructions.  (Id. at 17, 25.)

The Missouri Court of Appeals for the Eastern District affirmed the trial court's judgment in a summary order, supplemented by a memorandum, sent only to the parties, setting forth the reasons for the decision.  (Per Curiam Order and Mem. Supplementing Order Affirming J. Pursuant to Rule 30.25(b), dated June 20, 2006, Resp't's Ex. F.)   Specifically, the Missouri Court of Appeals stated:

> [Petitioner], his cousin, and their neighbor [Victim] had a barbeque at [Petitioner]'s home. [Petitioner] and [V]ictim engaged in a fist fight.  They quit fighting, and ultimately [Petitioner] went to bed. [Petitioner] testified that he woke up at some point and was frightened.  He got his gun from his nightstand and shot it once. [Petitioner] then got out of bed and the door opened.  Victim came into the room and grabbed [Petitioner]'s gun by the barrel.  They struggled over the gun and it went off twice.  Victim fell to the ground, and [Petitioner] went outside to his truck to call an ambulance.  Victim died as a result of the gunshot wounds. [Petitioner] was ultimately charged with murder in the second degree and armed criminal action as a result of [V]ictim's death. After trial, the court submitted the second degree murder and armed criminal action charges to the jury.  The court also submitted the lesser included charges of voluntary manslaughter and involuntary manslaughter in the first degree to the jury.  The jury returned guilty verdicts on the charges of involuntary manslaughter and armed criminal action. [Petitioner] filed a motion for new trial and alternative motion for judgment of acquittal.  The court did not rule on [Petitioner]'s motion, and he was sentenced to seven years' imprisonment for involuntary manslaughter, and fifteen years for the armed criminal action charge, to be served consecutively. [Petitioner] now appeals.

> In his first point on appeal, [Petitioner] claims that the trial court erred in admitting evidence of his prior arrests and alleged assaults because it constituted prejudicial evidence of prior bad acts.

> The decision to admit or exclude evidence is within the sound discretion of the trial court, and we will not reverse such a decision unless it is clear that the trial court abused its discretion.  State v. Tolliver, 101 S.W.3d 313, 315

(Mo. [Ct.] App. 2003)[] (citing State v. Bernard, 849 S.W.2d 10, 13 (Mo. . . . 1993) [(en banc)]).

Generally, evidence of uncharged crimes or acts is not admissible to show the propensity of the defendant to commit such crimes. Tolliver, 101 S.W.3d at 315 (citation omitted). "Evidence of prior bad acts may be admissible, however, if it is logically relevant in that it has some tendency to establish directly the defendant's guilt of the charged crimes and if its probative value outweighs its prejudicial effect." Id.

When a defendant raises the issue of a victim's violent nature, the defendant also raises his own. Vicory v. State, 81 S.W.3d 725, 729 (Mo. [Ct.] App. 2002) (citations omitted). "'When a defendant elects to testify in his own defense, he may be cross-examined in detail as to any matter generally referred to in his direct examination. Thus a defendant cannot complain about the state's inquiring about matters first brought into the case by the defendant.'" Id. at 728-29[] (quoting State v. Schlup, 785 S.W.2d 796, 801 (Mo. [Ct.] App. 1990)).

Here, [Petitioner] testified that he had a fight with [V]ictim earlier in the evening because [V]ictim looked at him and, unprovoked, told [Petitioner] he was going to "whip [Petitioner]'s butt." He testified that when he woke up he was frightened for his life and then [V]ictim entered the room. [Petitioner] testified that [V]ictim grabbed the barrel of the gun and struggled with [Petitioner] over the gun. [Petitioner] stated that he did not know what [V]ictim would do with the gun if [Petitioner] let go of it, and [Petitioner] testified that he feared what would happen if [V]ictim got the gun.

When a defendant raises self-defense, he puts motive and intent squarely at issue. Tolliver, 101 S.W.3d at 315. Additionally, he places his own reputation for violence at issue. Vicory, 81 S.W.3d at 728. By raising the issue of [V]ictim's violent behavior earlier in the evening, and claiming he was frightened by what [V]ictim would do with the gun, [Petitioner] brought the matter of [V]ictim's violent nature out on direct examination. Here, evidence was elicited in response to that on cross-examination regarding prior incidents in which [Petitioner] was violent. [Petitioner] testified that the police spoke to him about allegations of violent behavior involving kids playing on the street, and he testified about prior physical altercations with a woman. This evidence of [Petitioner]'s prior violent behavior was properly admitted in response to his assertion of self-defense, and his testimony regarding the violent nature of [V]ictim. Thus, the trial court did not abuse its discretion. Point denied.

- 10 -

In his second and final point, [Petitioner] claims the trial court erroneously instructed the jury on the lesser included offenses of voluntary and involuntary manslaughter, over [Petitioner]'s objection. [Petitioner] essentially argues that he has the right to waive the submission of the lesser included offenses.

Pursuant to section 556.046.2 RSMo (Supp. 2001), the trial court must instruct on a lesser included offense if there is a basis for acquittal of the offense with which [Petitioner] is charged, and if there is a basis for conviction of the lesser included offense.  "Any doubts about whether to instruct on a lesser included offense should be resolved in favor of instructing on the lesser offense, leaving it to the jury to decide which of two or more grades of an offense, if any, the defendant is guilty of." State v. Battle, 32 S.W.3d 193, 196 (Mo. [Ct.] App. 2000) (citations omitted).

[Petitioner] argues that Battle and State v. Davis, 26 S.W.3d 329 (Mo. [Ct.] App. 2000) (court determined that involuntary manslaughter instruction should have been given in second degree murder trial), are distinguishable from the present case.  In Battle and Davis, the defendants requested the instructions on lesser offenses. [Petitioner] argues that these cases do not apply to the present case because he did not request instructions on the lesser included offenses, but instead wished only to instruct the jury on the second degree murder charge.  However, [Petitioner]'s argument fails.

Pursuant to section 565.025 RSMo (2000), the lesser included offenses of murder in the second degree are voluntary manslaughter and involuntary manslaughter.  Section 565.025.3 provides that, "[n]o instruction on a lesser included offense shall be submitted unless requested by one of the parties or the court."  Thus, if one of the parties requests the instruction, the court must instruct on that issue if there is evidence to support the acquittal of the higher offense, and there is evidence to support the conviction of the lesser offense. State v. Isreal, 872 S.W.2d 647, 649 (Mo. [Ct.] App. 1994) (citations omitted) and State v. Taylor, 123 S.W.3d 924 (Mo. [Ct.] App. 2004).

While the cases discussing lesser included offenses generally concern circumstances in which the defendant requested the instruction and the trial court denied the defendant's request, there is no such distinction in section 565.025.3.  The statute merely states that where "one of the parties or the court" so requests, instructions shall be given on lesser offenses.

- 11 -

Although [Petitioner] himself did not request instructions on the lesser included offenses of voluntary and involuntary manslaughter, pursuant to section 565.025.3, such instructions are to be given if requested by either party. The state requested such instructions, and on appeal [Petitioner] does not argue that the evidence did not support the instructions. Therefore, the trial court did not err in submitting instructions on involuntary and voluntary manslaughter to the jury. Point denied.

The judgment of the trial court is affirmed.

(Mem. Supplementing Order Affirming J. Pursuant to Rule 30.25(b), dated June 20, 2006, Resp'ts Ex. F, at 2-6 (fifty-third alteration in original).) The state appellate court issued its mandate on October 6, 2006. (See docket entry, dated Oct. 6, 2006, in State v. McCord, No. ED866344 (available at https://www.courts.mo.gov/casenet/cases/searchDockets.do).)

On October 16, 2006, Petitioner timely filed a pro se motion for post-conviction relief under Missouri Supreme Court 29.15. (Pet'r Post-Conviction Motion, Legal File, Resp'ts Ex. I, at 3-9.) Through appointed counsel, Petitioner subsequently filed an amended post-conviction motion, including a request for an evidentiary hearing. (Pet'r Am. Post-Conviction Motion, Legal File, Ex. I, at 10-21.) In his amended post-conviction motion, Petitioner presented two claims. First, Petitioner claimed his constitutional rights to due process, a fair trial, and the effective assistance of counsel under the Fifth, Sixth, and Fourteenth Amendments were violated by his trial attorney's "disparaging remarks about [Petitioner] during . . . closing argument" because the position that Petitioner "was too stupid to plan such a thing" conflicted with Petitioner's claim of self defense. (Id. at 12-14.) Petitioner also claimed his rights to due process, a fair trial, and the effective assistance of counsel under the Fifth, Sixth, and Fourteenth Amendments were violated by his appellate attorney's failure to

- 12 -

challenge the sufficiency of the evidence.  (Id. at 14-18.)  Petitioner cited to **Strickland v. Washington**, 466 U.S. 668 (1984), among other cases, in support of his claims.

The motion court[4] held an evidentiary hearing on Petitioner's post-conviction motion. (See May 17, 2007 entry on Docket Sheet, Legal File, Resp'ts Ex. I, at 2; Mot. Hr'g Tr., Resp'ts Ex. J.)  At this hearing, the motion court took judicial notice of the record in Petitioner's criminal and post-conviction cases, and received a transcript of Petitioner's telephone deposition, an affidavit of Petitioner's appellate attorney, and the testimony of Petitioner's trial attorney.  (See Mot. Hr'g Tr., Resp'ts Ex. J; Exs. at Resp'ts Ex. K.) Petitioner's trial attorney testified that she made the challenged comments about Petitioner in closing in an effort to personalize Petitioner to the jury, so they would not hold his lifestyle against him, and to negate the State's argument that Petitioner acted with any premeditation. (Mot. Hr'g Tr., Resp'ts Ex. J, at 4-7.)  By affidavit, Petitioner's appellate attorney stated she considered raising a sufficiency of the evidence issue on direct appeal but decided not to because it would be frivolous in that "there was evidence from which the jury could find the elements" of involuntary manslaughter.  (Aff., Resp'ts Ex. K at 2.)  Specifically, Petitioner's appellate attorney averred:

> I thought about raising sufficiency (I believe the client wanted it) but didn't think I could raise it.  I thought it was frivolous as there was evidence from which the jury could find the elements.  I think [Petitioner] believed he acted in lawful self-defense and couldn't come to grips that the jury could decide which witnesses to believe.  I believe his cousin testified about the argument

---

[4]   The judge presiding over the post-conviction proceeding also presided over the trial and sentencing proceeding.

and shooting that occurred inside the [h]ouse.  A jail house informant also testified to statements [Petitioner] supposedly made while in jail.  A police officer also testified regarding [Petitioner]'s reaction and statements to the ambulance arriving.

(Aff., Resp'ts Ex. K at 2.)

On June 18, 2007, the motion court entered findings of fact and conclusions of law denying Petitioner's post-conviction motion ("Judgment").  (J., Legal File, Resp'ts Ex. I, at 22-26.)

On July 30, 2007, Petitioner filed his notice of appeal.  (See July 30, 2007 entry on Docket Sheet, Legal File, Resp'ts Ex. I, at 2.)  Petitioner raised two points on appeal.  First, Petitioner argued his rights to due process, the effective assistance of counsel, and a fair trial under the Fifth, Sixth, and Fourteenth Amendments were violated by his trial attorney's disparaging remarks during closing argument that Petitioner was a "'hard drinking, fight with his girlfriend old boy, redneck, hillbilly," which the jury could have taken as an admission Petitioner had fought with Victim because it "was fun for him, which conflicted with [Petitioner]'s claim of self-defense."  (Id. at 13, 15.)  For his second and final point on post-conviction appeal, Petitioner argued that his rights to due process and the effective representation of counsel under the Fifth, Sixth, and Fourteenth Amendments were violated by his appellate attorney's failure to challenge the sufficiency of the evidence because the State failed to prove beyond a reasonable doubt that Petitioner "did not act in lawful self-defense when he shot and killed" Victim.  (Id. at 14, 22.)   In relevant part, Petitioner and

- 14 -

Respondents cited **Strickland**, in support of their positions on appeal.  (See, e.g., Pet'r Br.,

Resp'ts Ex. G, at 17, 23; Resp'ts Br, Resp'ts Ex. H, at 13, 23, 24.)

Citing to **Strickland**, supra, the Missouri Court of Appeals for the Eastern District

affirmed the denial of Petitioner's post-conviction motion in a summary order, supplemented

by a memorandum, sent only to the parties, setting forth the reasons for the decision.  (Per

Curiam Order and Mem. Supplementing Order Affirming J. Pursuant to Rule 84.16(b) , dated

Aug. 19, 2008, Resp'ts Ex. L.)  Specifically, the Missouri Court of Appeals stated:

> In his first point on appeal, [Petitioner] claims the motion court clearly erred in denying his request for post-conviction relief because his trial counsel was ineffective. [Petitioner] argues trial counsel made negative remarks about him during the closing argument at trial.  According to [Petitioner], these remarks suggested he "enjoyed" fighting and conflicted with [Petitioner]'s claim of self-defense.

> During closing argument at trial, [Petitioner]'s counsel said:

> Now, take a minute and look at [Petitioner].  Okay.  And you all see him.  What you see is what you get.  He's not a beautiful young man.  He's not particularly educated.  He's not particularly intelligent.  He's a hard working, hard living, hard drinking, fight with his girlfriend old boy, redneck, hillbilly.  He's not capable of planning a murder like the State would have you believe.

> Reasonable trial strategy cannot serve as a basis for a claim of ineffective assistance of counsel.  State v. Marsh, 826 S.W.2d 846, 850 (Mo. [Ct.] App. 1992). [Petitioner] himself cites three cases in which notably negative comments made by trial counsel were found to be reasonable trial strategy and not ineffective assistance of counsel.  Neal v. State, 99 S.W.3d 571, 577 (Mo. [Ct.] App. 2003) (disparaging and derogatory remarks made by trial counsel about defendant at various times during the course of trial were reasonable trial strategy); Marsh, 826 S.W.2d at 850 (comments during closing argument regarding defendant's appearance were reasonable trial strategy and not ineffective assistance of counsel); and State v. Foster, 838 S.W.2d 60, 70 (Mo. [Ct.] App. 1992) (counsel was not ineffective for referring to defendant

as a "lowlife," "creep," "pervert," and a "poor excuse for a human being," during closing argument).

Trial counsel testified at the evidentiary hearing that she made these comments during closing argument in an attempt to personalize [Petitioner] to the jury, as well as to negate any argument by the state that [Petitioner] acted with premeditation. Counsel did not want the jury to think he planned to shoot [V]ictim, and she attempted to explain to the jury that [Petitioner]'s life was "drinking and living hard," which the jury should not hold against [Petitioner].

Here, trial counsel testified her decision to make the comments about [Petitioner] during closing argument was motivated by her desire to both personalize him to the jury, as well as to attempt to negate any argument of premeditation. Based upon this testimony, the motion court did not clearly err in concluding that counsel's comments during closing argument were reasonable trial strategy and not ineffective assistance of counsel. Point denied.

In his second and final point, [Petitioner] argues appellate counsel was ineffective for failing to raise the issue of the sufficiency of the evidence to support his convictions on appeal.

"The standard for establishing ineffectiveness of appellate counsel is high." Baker v. State, 180 S.W.3d 59, 65 (Mo. [Ct.] App. 2005) (citing Middleton v. State, 80 S.W.3d 799, 808 (Mo. . . . 2002) [(en banc)]). A [post-conviction] movant must show that appellate counsel failed to assert a claim of error on direct appeal that would have required reversal had it been asserted. Id. The claim of error must have been so obvious from the record that a competent and effective lawyer would have recognized it and presented it on appeal. Id. "The right to relief for ineffective assistance of appellate counsel tracks the plain error rule requiring that error that was not raised on appeal was so substantial as to amount to a manifest injustice or miscarriage of justice." Id.

Here, [Petitioner]'s argument is focused upon the failure of appellate counsel to assert a claim on direct appeal that the evidence was insufficient to support a conviction for involuntary manslaughter because the facts clearly showed it was a case of self-defense. In order to determine whether appellate counsel was ineffective for failing to raise such a claim on appeal, we look to the merits of such a claim. When considering whether there is sufficient evidence to support a conviction, we must determine whether the state

- 16 -

presented sufficient evidence from which a reasonable trier of fact could find each element of the charged offense beyond a reasonable doubt.  State v. Hayes, 88 S.W.3d 47, 56 (Mo. [Ct.] App. 2002).  We review the evidence in the light most favorable to the state, and we afford the state all favorable inferences drawn from the evidence.  Id. at 57.  We determine only whether sufficient evidence exists in the record from which a jury could find [Petitioner] guilty beyond a reasonable doubt.  Id.

Pursuant to section 563.031.2 RSMo (2000), a person may use deadly force to defend himself if "he reasonably believes that such deadly force is necessary to protect himself or another against death, serious physical injury, rape, sodomy or kidnapping or serious physical injury through robbery, burglary or arson."  Because [Petitioner] injected the issue of self-defense into the case, the burden then shifted to the state to prove the absence of self-defense beyond a reasonable doubt.  Hayes, 88 S.W.3d at 57.  "A person is entitled to acquittal as a matter of law on the basis of self-defense only if there is undisputed and uncontradicted evidence clearly establishing self-defense."  Id. (quoting State v. Dulaney, 989 S.W.2d 648, 651 (Mo. [Ct.] App. 1999)).  If there is conflicting evidence or different inferences can be drawn from the evidence, it is a question of fact for the jury.  Id.

Here, there was conflicting evidence regarding whether [Petitioner] acted in self-defense.  Although [Petitioner] testified he fought with [V]ictim earlier in the evening, and he stated at the time he was frightened for his life and then [V]ictim entered the room, there was conflicting evidence regarding whether [Petitioner] reasonably believed deadly force was necessary to protect him.  The evidence, viewed in the light most favorable to the state, was that [V]ictim had previously apologized to [Petitioner] for their earlier altercation.  In addition, the evidence showed that [Petitioner] fired a gun through the wall prior to [V]ictim[] entering [Petitioner]'s room.  More importantly, the evidence showed [V]ictim was unarmed when he entered [Petitioner]'s room.  Thus, based upon the evidence the jury could have reasonably found [Petitioner] did not have reasonable cause to believe he was in danger of death or serious physical injury and the use of the gun constituted unreasonable force to defend himself against [V]ictim.  Moreover, even if the jury did believe [Petitioner] was acting to defend himself from an attack by [V]ictim, "deadly force may not be used to repel a simple assault and battery."  Hayes, 88 S.Wd.3d at 58.

In this case, the evidence concerning [Petitioner]'s claim of self-defense was neither uncontradicted nor undisputed.  Instead, there was conflicting evidence regarding [Petitioner]'s claim, and there was sufficient evidence from

which the jury could have reasonably determined elements required for self-defense were not proven in this case.  Because the record contains sufficient evidence to support the jury's determination that [Petitioner] was not acting in self-defense, but instead was guilty of involuntary manslaughter, a claim regarding the sufficiency of the evidence to support his conviction on direct appeal would not have required reversal.  Therefore, appellate counsel was not ineffective for failing to raise a non-meritorious claim on appeal, and the motion court did not err in denying [Petitioner]'s request for post-conviction relief on this ground.  Point denied.

> The judgment of the motion court is affirmed.

(Mem. Supplementing Order Affirming J. Pursuant to Rule 84.16(b) , dated Aug. 19, 2008, Resp't's Ex. L, at 3-7.)

The Missouri Court of Appeals issued its mandate on September 11, 2008.  (See docket entry, dated Sept. 11, 2008, in State v. McCord, No. ED90061 (available at https://www.courts.mo.gov/casenet/cases/searchDockets.do).)

Petitioner timely filed his federal habeas petition in March 2009.  (Pet'r Pet. [Doc. 1].) In his petition, Petitioner presents four grounds for relief.  In his first ground, Petitioner urges his constitutional rights to due process and a fair trial under the Fifth, Sixth, and Fourteenth Amendments were violated by the admission, over his objection, of his prior bad acts because the State, rather than Petitioner, "open[ed]" with evidence about Victim's violent conduct.  (Id. at 4.)  For his second ground, Petitioner seeks federal habeas relief due to the giving of the instructions on the lesser charges of voluntary and involuntary manslaughter.  (Id. at 4.)  In his third ground, Petitioner argues his trial counsel was ineffective due to a closing argument that "prejudiced [Petitioner] to the jury."  (Id. at 5.)  For his fourth and final ground for relief, Petitioner contends that his appellate attorney provided ineffective assistance by failing to

raise    the    insufficiency    of    the    evidence    on    appeal.[5]

_____

[5]   Petitioner also attempts to pursue in this federal habeas proceeding claims:  that there was insufficient evidence to support the conviction due to the evidence of self-defense, such as the DNA in the bloody bedding, Petitioner being in bed "passed out cold" just before the shooting, "latent prints and blood on [the] gun barrel," his videotaped statement to the police showing he did everything not to take Victim's life while protecting his own life, including telling Victim to let go of the gun during the struggle; that his trial attorney was not prepared for trial because she did not present an expert witness "as to how [Petitioner] perceived the attack[] while sleeping"; that a "juror [was improperly] seated against [Petitioner's] objection" in that a person who stated a neighbor had been murdered was on the jury; that armed criminal action, which requires that the perpetrator act knowingly, is inconsistent with involuntary manslaughter, which requires only that the perpetrator act  recklessly; that the trial judge added "knowingly" to the armed criminal action instructions about one hour after the jury began deliberating with a copy of the written instructions; that "bail [was] unreasonable"; and that the motion court judge incorrectly stated in the Judgment that DNA is not physical evidence. (See Pet'r Pet [Doc. 1] and Pet'r correspondence, dated Oct. 27, 2010 [Doc. 21], Mar. 1, 2011 [Doc. 26], July 26, 2011 [Doc. 27], Sept. 13, 2011 [Doc. 28], Sept. 13, 2011 [Doc. 29], and Dec. 12, 2011 [Doc. 31].)  These claims are procedurally barred, however, and will not be further considered by this Court.

It is well established that "[t]o be eligible for federal habeas corpus relief, a state prisoner must first exhaust his state law remedies and fairly present the facts and substance of his habeas claim to the state court."  **Carney v. Fabian**, 487 F.3d 1094, 1096 (8th Cir. 2007) (internal quotation marks omitted) (quoting Middleton v. Roper, 455 F.3d 838, 855 (8th Cir. 2006)); see also **Baldwin v. Reese**, 541 U.S. 27, 29 (2004).  "'If a petitioner has not presented his habeas corpus claim to the state court, the claim is generally defaulted.'"  **Carney**, 487 F.3d at 1096 (quoting Barrett v. Acevedo, 169 F.3d 1155, 1161 (8th Cir. 1999) (en banc)); accord **Malone v. Vasquez**, 138 F.3d 711, 716 (8th Cir. 1998).  "Claims that have not been presented to the state courts, and for which there are no remaining state remedies, are procedurally defaulted."  **Skillicorn v. Luebbers**, 475 F.3d 965, 976 (8th Cir. 2007).

In Missouri, alleged trial court errors, including constitutional claims of trial court error, must be raised on direct appeal.  See, e.g., **Middleton v. State**, 103 S.W.3d 726, 740 (Mo. 2003) (en banc) (alleged trial court error in admitting letter "constitutes a claim of trial error in the admission of [a] document [that] must be raised on direct appeal and [is] not cognizable in a post-conviction motion"); **Griffin v. State**, 794 S.W.2d 659, 661 (Mo. 1990) (en banc) (alleged trial court error in allowing certain statements of prosecutor during closing argument is an "issue[] that w[as] before the trial court in the course of [the] criminal trial.  They are allegations of trial errors which are for review by direct appeal"); **Phillips v. State**, 214 S.W.3d 361, 364 (Mo. Ct. App. 2007) (finding merit in State's argument that a post-conviction claim that the trial court erred in failing to allow the defendant to represent himself at trial should have been raised on direct appeal because it was alleged trial court error known to the defendant and was not cognizable in a post-conviction proceeding).  Therefore, if trial court errors are not raised on direct appeal, they are defaulted.

A post-conviction proceeding is, however, the exclusive procedure for pursuing in state court ineffective assistance of counsel claims, and successive post-conviction motions are not permitted. Mo. S. Ct. Rule 29.15(a) and (l); **Moore-El v. Luebbers**, 446 F.3d 890, 896 (8th Cir. 2006). Moreover, the Missouri Supreme Court Rules expressly provide for an appeal from a post-conviction motion court's ruling. Mo. S. Ct. Rule 29.15(k). Claims that should have been but were not presented on appeal from a denial of a post-conviction motion are procedurally defaulted. See **Turnage v. Fabian**, 606 F.3d 933, 936, 940-41, 942 (8th Cir. 2010) (not addressing the merits of a federal claim that had not been fairly presented in a brief to the state supreme court after the denial of post-conviction relief); **Storey v. Roper**, 603 F.3d 507, 523-24 (8th Cir. 2010) (not addressing the merits of a claim that the petitioner had not pursued on appeal from the denial of post-conviction relief), cert.denied, 131 S. Ct. 1574 (2011); **Interiano v. Dormire**, 471 F.3d 854, 856 (8th Cir. 2006) (claims not presented in a Rule 29.15 post-conviction motion or included in appeal are procedurally defaulted); **Osborne v. Purkett**, 411 F.3d 911, 919 (8th Cir. 2005) (claim raised in a Rule 29.15 post-conviction motion but not presented on appeal was procedurally barred); **Sweet v. Delo**, 125 F.3d 1144, 1150 (8th Cir. 1997) (a claim not raised in the post-conviction appeal was defaulted); **Lowe-Bey v. Groose**, 28 F.3d 816, 818 (8th Cir. 1994) ("The failure to raise the ineffective assistance claims in an appeal from the denial of [the post-conviction motion] raises a procedural bar to pursuing those claims in federal court").

A review of the record shows that Petitioner did not pursue any of these claims of trial court error on direct appeal, did not present this claim of ineffective assistance of trial counsel on appeal from the motion court's judgment, and did not present on appeal from the motion court's judgment any challenge to statements made by the motion court in its Judgment. These claims are, therefore, defaulted.

Additionally, any claim that there was insufficient evidence to support the conviction is defaulted because the basis for that claim as pursued in this federal habeas proceeding has not been presented to the state courts. See **King v. Kemna**, 266 F.3d 816, 821 (8th Cir. 2001) (en banc) (quoting Flieger v. Delo, 16 F.3d 878, 885 (8th Cir. 1994)), for the proposition that, to preserve a claim for federal review, a habeas petitioner must raise both the factual and legal bases for the claim in the state courts and sua sponte finding a habeas claim procedurally barred because the basis for it had not been presented to the state courts). Petitioner presented to the state courts a claim that his appellate attorney was ineffective in failing to raise a sufficiency of the evidence claim, but did not pursue in state court a claim that there was insufficient evidence to support the conviction. See, e.g., Mem. Supplementing Order Affirming J. Pursuant to Mo. S. Ct. Rule 30.25(b), Resp'ts Ex. 11, at 2-8.) Therefore, that claim is also defaulted.

"Unless a habeas petitioner shows cause and prejudice or that he is actually innocent of the charges, a [federal habeas] court may not reach the merits of procedurally defaulted claims in which the petitioner failed to follow applicable state procedural rules in raising the claims." **Skillicorn**, 475 F.3d at 976-77; see also **Sawyer v. Whitley**, 505 U.S. 333, 338 (1992). "'[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective

- 20 -

Respondents counter that the petition should be denied because the claims lack merit.  (Resp'ts Response, at 3-22 [Doc. 13].)

---

factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'"  **Greer v. Minnesota**, 493 F.3d 952, 957 (8th Cir. 2007) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)).  There is no exhaustive catalog of the objective impediments, nor have the precise contours of the cause requirement been clearly defined.  **Ivy v. Caspari**, 173 F.3d 1136, 1140 (8th Cir. 1999).  What has been established is that a "fail[ure] to raise [a] claim despite recognizing it, does not constitute cause for a procedural default."  **Murray**, 477 U.S. at 486.

Petitioner has not argued any cause for his failure properly to present these claims in state court.  Because no cause has been established for Petitioner's procedural default, it is unnecessary to consider whether he has demonstrated prejudice.  **Abdullah v. Groose**, 75 F.3d 408, 413 (8th Cir. 1996) (en banc).

Petitioner's defaulted grounds may be reached absent a showing of cause and prejudice for his procedural default if he establishes that a failure to consider the claims' merits will result in a fundamental miscarriage of justice.  "Procedurally barring a claim that establishes actual innocence is considered a fundamental miscarriage of justice."  **Cox v. Burger**, 398 F.3d 1025, 1031 (8th Cir. 2005).  A showing of actual innocence requires new evidence and a "show[ing] that 'it is more likely than not that no reasonable juror would have convicted him in light of th[at] new evidence.'"  **Osborne**, 411 F.3d at 920 (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)); accord **House v. Bell**, 547 U.S. 518, 536-39 (2006) (Schlup standard applies to determine whether defaulted claims in a first federal habeas petition should be considered based on actual innocence).  "'Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim.'"  **Cagle v. Norris**, 474 F.3d 1090, 1099 (8th Cir. 2007) (quoting Schlup, 513 U.S. at 316).

Petitioner does not submit any new evidence of his actual innocence, nor does he allege that such evidence exists.  Instead, Petitioner presents argument based either on evidence introduced at trial or evidence that was available at the time of trial but was not introduced into evidence.  Such an argument is not sufficient to avoid the procedural bar.  Therefore, the above claims are procedurally barred and will not be considered on their merits by this Court.

Although the Court will not address the merits of Petitioner's insufficiency of the evidence claim as a basis for federal habeas relief, the Court has noted it considers that argument by Petitioner as a traverse, see Order, dated Dec. 1, 2010, and will consider it with respect to Petitioner's ineffective assistance of appellate counsel claim.

## Discussion

Merits - Standard of Review.  Title 28 U.S.C. § 2254(d) mandates that a federal court grant habeas relief on a claim that was adjudicated on its merits by the State courts *only*

> when the state court's decision [is] contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court [of the United States], or the [state court] decision [is ]based on an unreasonable determination of the facts in light of the evidence presented in the state court.

**de la Garza v. Fabian**, 574 F.3d 998, 1001 (8th Cir. 2009); accord **Christenson v. Ault**, 598 F.3d 990, 994 (8th Cir. 2010).

> A state court decision is contrary to clearly established federal law if it reaches a conclusion opposite to one reached by the [United States] Supreme Court on a question of law or decides the case differently than the [United States] Supreme Court has decided a case with a materially indistinguishable set of facts.

**de la Garza**, 574 F.3d at 1001; accord **Losh v. Fabian**, 592 F.3d 820, 823 (8th Cir. 2010). "A state court decision involves an unreasonable application of clearly established federal law if, in the federal court's independent judgment, the relevant state court decision not only applied clearly established federal law incorrectly, but also did so unreasonably." **de la Garza**, 574 F.3d at 1001.  "The unreasonable application inquiry is an objective one." **Id.**; see **Losh**, 592 F.3d at 823 (under the unreasonable application clause of § 2254, a habeas petition may be granted "only if the state court applied the correct governing legal principle in an objectively unreasonable manner").

In reviewing state court proceedings to ascertain whether they are contrary to or involve an unreasonable application of clearly established federal law, this Court "is limited to the record that was before the state court that adjudicated the claim on the merits." **Cullen v. Pinholster**, 131 S. Ct. 1388, 1398 (2011). Additionally, this Court's review is limited to consideration of the United States Supreme Court precedents at the time the state court issues its decision on the merits. **Greene v. Fisher**, 132 S. Ct. 38, 44 (2011) (relying on Cullen, supra); accord **Losh**, 592 F.3d at 823 ("[o]nly rulings in [United States] Supreme Court decisions issued before the state court acts are considered clearly established federal law, for a state court does not act contrary to or unreasonably apply clearly established federal law if there is no controlling [United States] Supreme Court holding on the point" (citations omitted)). The state court does not need to cite to Supreme Court cases, "'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" **Revels v. Sanders**, 519 F.3d 734, 739 (8th Cir. 2008)) (quoting Early v. Packer, 537 U.S. 3, 8 (2002) (per curiam)).

"[T]he 'summary nature' of the [state court's] discussion of [a] federal constitutional question does not preclude application of [§ 2254's] standard." **Brown v. Luebbers**, 371 F.3d 458, 462 (8th Cir. 2004) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." **Harrington v. Richter**, 131 S. Ct. 770, 784-85 (2011). Section 2254(d) "does not

- 23 -

require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" **Id.** at 785.  When, however, a state court issues a summary ruling, the petitioner can only satisfy the "unreasonable application" prong of habeas review by showing there is no reasonable basis for the state court decision, which the habeas court assesses by determining what arguments or theories could have supported the state court decision and "'whether fairminded jurists could disagree that those arguments or theories are inconsistent'" with a prior decision of the United States Supreme Court.  **Cullen**, 131 S. Ct. at 1402 (quoting Harrington, 131 S. Ct. at 784, 786).

Additionally, in a federal habeas action pursued by a state prisoner, "a determination of a factual issue made by a State court shall be presumed to be correct" unless rebutted by the petitioner by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  The deference owed by a federal habeas court to a state court's findings of fact includes deference to state court credibility determinations, **Smulls v. Roper**, 535 F.3d 853, 864 (8th Cir. 2008) (en banc), and to "[a] state court's findings of fact made in the course of deciding" an ineffective assistance of counsel claim, **Odem v. Hopkins**, 382 F.3d 846, 849 (8th Cir. 2004).  Moreover, the presumption of correctness of findings of fact applies to the factual determinations made by a state court at either the trial or appellate levels.  **Smulls**, 535 F.3d at 864-65.

Ground One - Admission of Prior Bad Acts.  Petitioner urges the trial court violated his federal constitutional rights to due process and a fair trial by admitting, over his objection, testimony during his cross-examination that police questioned him about an incident involving

his alleged violent behavior toward kids playing in the street and that he engaged in physical altercations with a woman.

While acknowledging that evidence of prior bad acts is generally not admissible to show a person's propensity to commit a crime, the Missouri Court of Appeals stated that a defendant places his own reputation for violence at issue when he raises the issue of a victim's violent nature and self-defense.  (Mem. Supplementing Order Affirming J. Pursuant to Rule 30.25(b), dated June 20, 2006, Resp'ts Ex. F, at 3-4.)  Here, that court found, Petitioner presented a theory of self-defense and brought out on his direct examination Victim's violent nature by referring to Victim's unprovoked "violent behavior earlier in the evening, and [by] claiming he was frightened by what [V]ictim would do with the gun."  (Id. at 4.)

A federal habeas court may reverse a state court evidentiary ruling as violating the petitioner's right to a fair trial only if the petitioner shows the alleged evidentiary error fatally infected the proceedings and rendered the petitioner's trial fundamentally unfair.  **Anderson v. Goeke**, 44 F.3d 675, 679 (8th Cir. 1995).  More specifically, "[n]o due process violation exists for the admission of prior bad acts testimony unless it can be said that the testimony was 'so conspicuously prejudicial or of such magnitude that it fatally infected the trial and deprived [the defendant] of fundamental fairness.'" **McDaniel v. Lockhart**, 961 F.2d 1358, 1360 (8th Cir. 1992) (quoting Hobbs v. Lockhart, 791 F.2d 125, 128 (8th Cir. 1986)); accord **Parker v. Bowersox**, 94 F.3d 458, 460 (8th Cir. 1996) (admission of testimony that the petitioner had blackened the murder victim's eyes on one or two prior occasions did not

violate the petitioner's right to due process in that it did not fatally infect the trial because there was "abundant testimony" that the petitioner was threatening and hitting the victim shortly before her death); **Troupe v. Groose**, 72 F.3d 75, 76 (8th Cir. 1995) (admission of earlier deviate sexual intercourse conviction did not violate the petitioner's right to due process in trial of rape, sodomy and kidnapping charges involving a minor boy in that it did not fatally infect the trial rendering it fundamentally unfair due to the other evidence at trial). To satisfy his burden, the petitioner must show there is a reasonable probability that the alleged error affected the trial's outcome, i.e., that the verdict would have been different absent the allegedly erroneously admitted evidence. **Anderson**, 44 F.3d at 679; accord **Troupe**, 72 F.3d at 76.

Here, there is ample support for the verdict even without the evidence of Petitioner's prior bad acts. Petitioner's other testimony conveys the circumstances immediately surrounding the shooting that resulted in Victim's death, including that Petitioner fired a shot before Victim came into the bedroom and that Victim was unarmed when he came into the bedroom where Petitioner was armed with a gun. Even without the evidence of the prior bad acts, that testimony, in addition to other evidence at trial, supports the jury's conclusion that Petitioner's reckless conduct resulted in the shooting of Victim and that the circumstances did not support a conclusion that Petitioner acted in self-defense. Petitioner has not shown there is a reasonable probability that the outcome of the trial would have been different if the jury had not learned of Petitioner's prior reported and admitted violent behavior.

The state appellate court's decision to uphold the admission of the testimony regarding Petitioner's prior bad acts was not contrary to or an unreasonable application of clearly established federal law.  Additionally, there is no showing that the state courts unreasonably determined the facts in light of the evidence presented on this ground for relief.

Ground one is denied.

Ground two - Lesser Included Offense Instructions.  Petitioner contends the instructions on involuntary and voluntary manslaughter should not have been given to the jury because he did not offer them and objected to the trial court giving them.

The Missouri Court of Appeals found that, under Missouri law, lesser included offense instructions may be requested by either party or the court, and must be given if the defendant could be acquitted of the charged offense and the evidence supports a conviction on the lesser included offense.  That court further concluded that, here, the evidence supported the giving of instructions for the lesser included offenses of involuntary and voluntary manslaughter. See Mo. Rev. Stat. Sections 565.025 and 565.046.1.

A federal habeas court cannot re-examine state court determinations of state-law questions. **Estelle v. McGuire**, 502 U.S. 62, 67-68 (1991); see **Taylor v. Bowersox**, 329 F.3d 963, 968 (8th Cir. 2003) ("A state's interpretation of its own law is virtually unreviewable by a federal court").  Here, Petitioner is challenging the state court's interpretation of state law regarding the giving of lesser included offense instructions.  That challenge is not cognizable in a federal habeas proceeding, and will not be further addressed.

Ground two is denied.

Ground Three - Ineffective Assistance of Trial Attorney.  Petitioner urges his trial attorney provided ineffective assistance by making negative remarks about him during her closing argument.

The Missouri Court of Appeals rejected this claim, finding that counsel's testimony showed the challenged were reasonable trial strategy.

The Sixth Amendment right to the assistance of counsel is a right to the effective assistance of counsel.  **Marcrum v. Luebbers**, 509 F.3d 439, 502 (8th Cir. 2007) (citing Kimmelman v. Morrison, 477 U.S. 365, 377 (1986)).  "To show a constitutional violation of the right to counsel a [petitioner] must show first, that counsel's performance was deficient, and second, that counsel's errors prejudiced the defense."  **Id.** (citations omitted) (citing Strickland, 466 U.S. at 687); **Kellogg v. Skon**, 176 F.3d 447, 452 (8th Cir. 1999).

To establish that counsel's performance was deficient, a petitioner must show that counsel "'made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" **Greiman v. Thalacker**, 181 F.3d 970, 972 (8th Cir. 1999) (quoting Strickland, 466 U.S. at 687).  More specifically, a petitioner must demonstrate that "counsel's performance was so deficient as to fall below an objective standard of the customary skill and diligence displayed by a reasonably competent attorney." **Armstrong v. Kemna**, 534 F.3d 857, 863 (8th Cir. 2008) (citing Strickland, 466 U.S. at 687-89).  "Only reasonable competence, the sort expected of the 'ordinary fallible lawyer,' is demanded by the Sixth Amendment." **White v. Helling**, 194 F.3d 937, 941 (8th Cir. 1999) (quoting Nolan

v. Armontrout, 973 F.2d 615, 618 (8th Cir. 1992)).  The Court is highly deferential in analyzing counsel's conduct and "indulg[es] a strong presumption that counsel's conduct falls within the wide range of professional judgment.'" **Armstrong**, 534 F.3d at 863 (quoting Middleton v. Roper, 455 F.3d 838, 846 (8th Cir. 2006)).

To establish prejudice, a petitioner must demonstrate "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" **Armstrong v. Kemna**, 590 F.3d 592, 595-96 (8th Cir.) (quoting McCauley-Bey v. Delo, 97 F.3d 1104, 1105 (8th Cir. 1996)), cert. denied, 130 S. Ct. 3369 (2010).  "'A reasonable probability is [a probability] sufficient to undermine confidence in the outcome.'" **Id.** at 596 (quoting McCauley-Bey, 97 F.3d at 1105); accord **Carroll v. Schriro**, 243 F.3d 1097, 1100 (8th Cir. 2001) (quoting Strickland, 466 U.S. at 694).  The petitioner bears the burden of showing such a reasonable probability.  **Lawrence v. Armontrout**, 961 F.2d 113, 115 (8th Cir. 1992).

The question of prejudice from counsel's performance need not be reached if the performance was not deficient.  See **Parkus v. Bowersox**, 157 F.3d 1136, 1140 (8th Cir. 1998).  Conversely, the question of counsel's allegedly deficient performance need not be reached if a petitioner has failed to show prejudice.  See **Strickland**, 466 U.S. at 697; **Williams v. Locke**, 403 F.3d 1022, 1025 (8th Cir. 2005).

The right to the effective assistance of trial counsel extends to closing argument.  See **Yarborough v. Gentry**, 540 U.S. 1, 5 (2003) (per curiam).  Notably, however, "[j]udicial

review of a defense attorney's summation is . . . highly deferential – and doubly deferential when it is conducted through the lens of federal habeas" review.  **Id.** at 6.  "[D]eference to counsel's tactical decisions in . . . closing presentation is particularly important because of the broad range of legitimate defense strategy at that stage."  **Herring v. New York**, 422 U.S. 853, 862 (1975).

Here, Petitioner's trial attorney testified that she intentionally made the challenged comments during closing for strategic reasons.  That strategy was objectively reasonable, especially in view of the jury's rejection of the second-degree murder and voluntary manslaughter offenses.  Having found Petitioner's trial attorney's challenged comments during closing did not constitute deficient performance, the Court will not discuss the prejudice prong of the **Strickland** test.

The state appellate court's decision that Petitioner's trial attorney did not provide ineffective assistance of counsel by making the challenged comments during closing was not contrary to or an unreasonable application of clearly established federal law.  Nor was that state court decision based on an unreasonable determination of the facts in light of the evidence.

Ground three is denied.

Ground Four - Ineffective Assistance of Appellate Counsel.  Petitioner urges his attorney on direct appeal provided ineffective assistance by not raising sufficiency of the evidence as a point on appeal.

- 30 -

The Missouri Court of Appeals concluded there was conflicting evidence that Petitioner acted in self-defense and sufficient evidence to support the jury's determination that Petitioner was guilty of involuntary manslaughter and, therefore, "a claim regarding the sufficiency of the evidence to support his conviction on direct appeal would not have required reversal." (Mem. Supplementing Order Affirming J. Pursuant to Rule 84.16(b), Resp'ts Ex. L, at 6-7.)

It is well established that the Sixth Amendment guarantees the right to effective assistance of counsel on direct appeal. See **Evitts v. Lucey**, 469 U.S. 387, 396-97 (1985). The proper standard for evaluating a claim of ineffective assistance of appellate counsel is that set forth in **Strickland**, supra. **Smith v. Robbins**, 528 U.S. 259, 285 (2000); **Boliek v. Bowersox**, 96 F.3d 1070, 1073 (8th Cir. 1996). Petitioner must show that the appellate attorney's performance was below the reasonable standard of competence and that there is a reasonable probability that the result would have been different absent this deficient performance. See **Strickland**, 466 U.S. at 687; **Gee v. Groose**, 110 F.3d 1346, 1352 (8th Cir. 1997).

With respect to the performance element, appellate counsel is expected to winnow the issues on appeal to highlight the most meritorious issues and eliminate the sure losers. See **Jones v. Barnes**, 463 U.S. 745, 751-52 (1983); **Gee**, 110 F.3d at 1352; see also **Parker v. Bowersox**, 94 F.3d 458, 462 (8th Cir. 1996) ("To perform competently under the Sixth Amendment, counsel is neither required nor even advised to raise every conceivable issue on

appeal"); **Reese v. Delo**, 94 F.3d 1177, 1185 (8th Cir. 1996) (counsel has discretion to abandon losing issues on appeal). An attorney's decision not to raise an unwinnable issue on appeal is an important strategic decision in competent appellate advocacy, and does not constitute ineffective assistance of appellate counsel. **Horne v. Trickey**, 895 F.2d 497, 500 (8th Cir. 1990); see **Jones**, 463 U.S. at 751-54 (attorney on direct appeal does not have duty to pursue on appeal every colorable issue); **Grubbs v. Delo**, 948 F.2d 1459, 1466-67 (8th Cir. 1991) (finding no merit to the petitioner's argument that his confession was inadmissible and, therefore, the petitioner's direct appeal counsel "could not have been ineffective for failing to argue the issue"); **Thompson v. Jones**, 870 F.2d 432, 434-35 (8th Cir. 1988) (the petitioner's double jeopardy claim was without merit, so there was no prejudice and the "petitioner [wa]s not entitled to any [federal habeas] relief on the grounds of ineffective assistance of counsel" on appeal). For the prejudice element of his ineffective assistance of appellate counsel claim, Petitioner "must show a reasonable probability that, but for his counsel's unreasonable [conduct], he would have prevailed on his appeal." **Smith**, 528 U.S. at 285. As with an ineffective assistance of trial counsel claim, the court may resolve an ineffective assistance of appellate counsel claim by finding either no prejudice or no deficient performance and, if either element is not satisfied, the court does not need to address the other element. **Id.** at 286 n. 14.

Here, Petitioner cannot establish either prong. The affidavit from his appellate attorney shows she properly exercised her discretion in winnowing issues for appeal by considering

the sufficiency of the evidence issue and rejecting it based on the evidence.  Additionally, Petitioner cannot show prejudice because the state appellate court that would have considered the issue on direct appeal found, when considering the ineffective assistance of appellate counsel point in the post-conviction appeal, that there was sufficient evidence to support the involuntary manslaughter conviction.  Therefore, Petitioner's position that an insufficiency of the evidence issue on direct appeal would have had merit is refuted by the very court that would have decided the question on direct appeal.  Because Petitioner would not have prevailed on a sufficiency of the evidence issue on appeal, no prejudice results from failing to raise the issue on direct appeal.

The state court's determination that Petitioner's attorney on direct appeal did not provide ineffective assistance by failing to pursue an insufficiency of the evidence point on appeal was not contrary to or an unreasonable application of clearly established federal law. Nor was that state court decision based on an unreasonable determination of the facts in light of the evidence.

Ground four is denied.

## Conclusion

Upon careful consideration of the merits of each of Petitioner's four claims, finding that the second ground is not cognizable, and concluding that the other claims lack merit,

**IT IS HEREBY ORDERED** that Chris Koster, Attorney General for the State of Missouri, is **ADDED** as a Respondent in this case.

- 33 -

**IT IS FURTHER ORDERED** that Jeff Norman is **SUBSTITUTED** for Dave Dormire, the originally named Respondent in this case.

**IT IS FINALLY ORDERED** that the 28 U.S.C. § 2254 petition of Leonard Allen McCord is **DENIED** without further proceedings.

An appropriate Judgment shall accompany this Memorandum and Order.

/s/Thomas C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE

Dated this 30th day of March, 2012.